# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

MICHAEL H. HOLLAND, et al.,

        Plaintiffs,

v.                         CIVIL ACTION NO.  2:17-cv-02091

CONSOL ENERGY INC.,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment.  (ECF Nos. 29, 31.)  Because the Court finds that it lacks subject-matter jurisdiction to hear this matter, the Court **DENIES AS MOOT** those motions.

### I.   BACKGROUND

The history of health care benefits for retired coal industry workers and their dependents is well documented.  *See, e.g.*, *E. Enters. v. Apfel*, 524 U.S. 498, 504–514 (1998); *see also Holland v. Big River Minerals Corp.*, 181 F.3d 597, 600–602 (4th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).  The Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), in part, established the 1992 United Mine Workers of America ("UMWA") Benefit Plan ("1992 Plan") "to provide health benefits to retirees who were eligible for but not receiving benefits under the 1950 or 1974 UMWA Benefit Plans and to retirees who, although eligible for coverage under § 9711(b), are not receiving benefits from an individual employer plan."  *Big River Minerals Corp.*, 181 F.3d at 601 (citing 26 U.S.C. § 9712).  Benefits from the 1992 Plan are funded through premiums paid by the

"1988 last signatory operators"[1] and their "related persons."[2]  *Id.*; *see also* 26 U.S.C. § 9712(d)(1), (4).

Coverage requirements for the 1992 Plan are established in part in § 9711.  That section reads, in pertinent part, as follows:

> (1) In General.  The last signatory operator of any individual who, as of February 1, 1993, is not receiving retiree health benefits under the individual employer plan maintained by the last signatory operator pursuant to a 1978 or subsequent coal wage agreement, but has met the age and service requirements for eligibility to receive benefits under such plan as of such date, shall, at such time as such individual becomes eligible to receive benefits under such plan, provide health benefits coverage to such individual and the individual's eligible beneficiaries[3]

---

[1] "The term '1988 last signatory operator,' generally speaking, refers to a coal operator who signed the 1988 [National Bituminous Coal Wage Agreement] and was the most recent coal industry employer of a coal industry retiree."  *Big River Minerals Corp.*, 181 F.3d at 601 (citing 26 U.S.C. §§ 9701(c)(1), (3), (4), 9712(d)(6)).

[2] Section 9701 provides the following definition for "related persons:"

> (A) In general.  A person shall be considered to be a related person to a signatory operator if that person is—
>
>> (i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator;
>>
>> (ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or
>>
>> (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.
>
> A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).

26 U.S.C. § 1701(c)(2).

[3] Section 9712 provides the following definition of "eligible beneficiary:"

> For purposes of this section, the term "eligible beneficiary" means an individual who—
>
>> (A) but for the enactment of this chapter, would be eligible to receive benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, based upon age and service earned as of February 1, 1993; or
>>
>> (B) with respect to whom coverage is required to be provided under section 9711, but who does not receive such coverage from the applicable last signatory operator or any related person,

which is described in paragraph (2). This paragraph shall not apply to any individual who retired from the coal industry after September 30, 1994, or any eligible beneficiary of such individual.

(2) Coverage. Subject to the provisions of subsection (d), health benefits coverage is described in this paragraph if it is substantially the same as (and subject to all the limitations of) the coverage provided by the individual employer plan as of January 1, 1992. Such coverage shall continue for as long as the last signatory operator (and any related person) remains in business.

26 U.S.C. § 9712(b).

Defendant CONSOL Energy, Inc. ("Consol") admits that it is a "related person" to which the Coal Act applies. (ECF No. 80 at 2 ¶ 7.) Thus, it is uncontested that Consol and its subsidiaries are required pursuant to § 9711 to provide health benefits to eligible beneficiaries. (ECF No. 30 at 8.) Beginning in 1993, Consol participated in a Model Benefit Plan created by the UMWA and the Bituminous Coal Operators' Association ("BCOA") "for the retirees and dependents of BCOA member companies who were eligible to receive healthcare benefits from their last signatory employer pursuant to Section 9711 of the Coal Act." (*Id.*)

However, in July 2016, Consol informed those entities that it and its subsidiaries would no longer participate in the model plan in favor of establishing and administering their own benefits plan under § 9711 for the over 2,300 eligible beneficiaries. (*Id.*; ECF No. 11 at 5.) Plaintiffs acknowledge that Consol's participation in the model plan complied with the statutory requirements of § 9711 and that changes implemented by Consol pursuant to two agreements reached with the UMWA in 2007 and 2011 also complied with those statutory requirements.

---

and any individual who is eligible for benefits by reason of a relationship to an individual described in subparagraph (A) or (B). In no event shall the 1992 UMWA Benefit Plan provide health benefits coverage to any eligible beneficiary who is a coal industry retiree who retired from the coal industry after September 30, 1994, or any beneficiary of such individual.

26 U.S.C. § 9712(b)(2).

(ECF No. 32 at 11.)   Nevertheless, Plaintiffs argue that the changes Consol unilaterally made to its plan effective October 1, 2016, violates § 9711(a) of the Coal Act because the new plan is not "substantially the same" as that required of last signatories under federal law.   (*See* ECF No. 32 at 28–41; *see also* ECF No 1 at 4 ¶¶ 14–16.)

Plaintiffs filed their Complaint in this matter on March 30, 2017.   (ECF No. 1.)   On March 26, 2018, this Court denied in part a motion to dismiss filed by Consol with respect to one argument and denied as moot the remaining grounds as they were reasserted in Consol's Motion for Summary Judgment filed on October 13, 2017.   (ECF Nos. 29, 39.)   Plaintiffs also filed their Motion for Summary Judgment on October 13, 2017.   (ECF No. 31.)   Responses to the motions were filed on October 27, 2017, (ECF Nos. 33, 34), and the parties filed their replies on November 3, 2017, (ECF Nos. 35, 36).   As such, the motions are fully briefed and ripe for adjudication.

## II.   STANDARD OF REVIEW

"A district court must dismiss a claim if, at any time, it appears that the court lacks jurisdiction over the subject matter of the claim."   *Johnson v. Wexford Health Sources, Inc.*, No. 2:15-cv-16010, 2015 WL 9008848, at *2 (S.D. W. Va. Dec. 15, 2015) (citations omitted).   A court's lack of subject-matter jurisdiction generally may be raised at any time, and courts should raise the question *sua sponte* when appropriate.   *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").   When subject-matter jurisdiction is challenged on the face of the complaint, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration" in that the factual allegations in the complaint are taken as true.   *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009)

(quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Ultimately, "federal courts are not free to simply assume that they possess subject-matter jurisdiction and then proceed to decide the merits of the issues before them when their jurisdiction remains in doubt." *Stop Reckless Economic Instability Caused by Democrats v. Fed. Election Comm'n*, 814 F.2d 221, 228 (4th Cir.) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)), *cert. denied*, 137 S. Ct. 374 (2016).

## III. DISCUSSION

Article III of the United States Constitution constrains the judicial authority of federal courts to "cases" and "controversies." *Bishop v. Barlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citations omitted). The Supreme Court has reiterated the following when determining whether a plaintiff has standing to bring a claim:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *accord Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230–31 (4th Cir. 2008).

In other words, "[p]roper standing requires that a plaintiff assert a direct injury that can be traced to the defendant's conduct and from which relief to the plaintiff will likely follow from a favorable adjudication to the plaintiff." *Gilbert Imported Hardwoods, Inc. v. Holland*, 176 F. Supp. 2d 569, 576 (S.D. W. Va. 2001) (citations omitted). Plaintiffs who file their complaint in federal court bear the burden of establishing all three requirements. *See Doe v. Va. Dep't of State*

*Police*, 713 F.3d 745, 753 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014). Further, "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere [factual] allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31 (1979)).

Consol argues that Plaintiffs lack standing to pursue their claims because Plaintiffs have suffered no real harm. Consol states that it began providing benefits to Coal Act beneficiaries under its own Coal Act Plan twenty-five years ago and that it "continues to cover all of its former eligible employees under its Coal Act Plan." (ECF No. 8 at 3.) Because "Plaintiffs do not allege that they have provided benefits to a single beneficiary for whom [Consol] is responsible under its Coal Act Plan," Consol avers that "the changes made to [its] plan have had no impact, cost, or injury on Plaintiffs." (*Id.*; *see also* ECF No. 11 at 2 ("The sole exception is in the event [Consol] were to cease to provide healthcare benefits to its Coal Act retirees. In that event, and only in that event, would the 1992 Plan incur harm or have an interest in [Consol's Coal Act] retirees." (citing 26 U.S.C. § 9712(b)(2)(B))).) Consol further argues that even if one of its beneficiaries seek coverage from the Plaintiffs' 1992 Plan in the future, Consol "has provided a security to Plaintiffs which would cover any costs Plaintiffs incurred." (ECF No. 8 at 3 (citing 26 U.S.C. § 9712(d)(1)(B)).) Until then, however, Consol contends that Plaintiffs cannot "serve as the legal representative of [Consol's] Coal Act beneficiaries." (ECF No. 11 at 3, 5 ("It is the retirees' right and role to challenge any denial of benefits, and none have.").)

Plaintiffs, on the other hand, cite § 9712(b) as proof of their injury because the statute requires the 1992 Plan to "provide health benefits coverage to any eligible beneficiary who . . .

does not receive such coverage from the applicable last signatory operator or any related person."

(ECF No. 10 at 5 (quoting 26 U.S.C. § 9712(b)).) They do not allege that they have provided

benefits to eligible beneficiaries who would otherwise receive coverage from Consol's Coal Act

Plan. However, they claim that Consol has failed to provide "substantially the same" coverage as

it provided on January 1, 1992, as required by statute, and that their injury is therefore imminent

as the 1992 Plan is required to provide those benefits if Consol does not. (*See id.* at 5–6

("Consol's position would require the 1992 Plan to wait until a beneficiary has been negatively

affected, perhaps irreversibly, by its breach of Section 9711 before a remedy is sought."); *see also*

ECF No. 33 at 16 (providing that the 1992 Plan "will also be forced to enroll any and all spouses

and other dependents").) Plaintiffs observe that "[n]owhere in the Coal Act is there any indication

that the 1992 Plan is required to enroll beneficiaries before seeking judicial assistance to remedy

a last signatory operator's breach of its obligation to provide substantially the same coverage it

provided on January 1, 1992." (ECF No. 10 at 6.)

The Court agrees with Plaintiffs that their association to the statute at issue and Consol's

compliance with it is concrete and established by Congress. However, despite Plaintiffs' reliance

on § 9712(b), the focus of this analysis necessarily extends beyond Plaintiffs' statutory standing

to assert claims against Defendant on behalf of the 1992 Plan. In addition to statutory standing,

Plaintiffs also must have constitutional standing to bring their claims under Article III. *See David*

*v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (citations omitted). The two theories of standing

must not be conflated as they have distinct requirements. The question here thus becomes

whether Plaintiffs, as Trustees of the 1992 Plan, have suffered an injury supporting Article III

standing where no beneficiaries of Consol's Coal Act Plan have sought benefits from the 1992

Plan and the 1992 Plan has not expended any costs in relation to Consol's Coal Act Plan outside the resources spent on this litigation.

As a preliminary matter, the Court finds the cases cited by Plaintiffs in support of their standing to bring this case distinguishable. For example, in *Holland v. Big River Minerals Corp.*, the Trustees of the 1992 Plan brought an action under §§ 9711 and 9712 on behalf of eleven miners and their dependents where the coal company defendants failed to provide those individuals benefits after determining that they did not meet the age and service requirements of the plan.[4] *See* 181 F.3d at 602. There, the 1992 Plan was forced to provide health benefits for the eligible beneficiaries because the defendant companies maintained that the miners in question were not entitled to benefits, and the Fourth Circuit Court of Appeals affirmed the district court's judgment directing the coal companies to reimburse the Trustees for the benefits provided. *Id.* at 600.[5] Further, this situation is unlike that in *Holland v. Keenan Trucking Co.*, where the Trustees of the 1992 Plan sued "to collect unpaid premiums," which is how the 1992 Plan funds benefits. *See* 102 F.3d 736, 738–39 (4th Cir. 1996). In that case, the 1992 Plan itself suffered direct economic damages because a West Virginia coal operator, First Big Mountain, stopped paying premiums required under statute after the company began bankruptcy proceedings. *See id.* at 739; *see also Holland v. Bibeau Constr. Co.*, 774 F.3d 8, 10–12 (D.C. Cir. 2014) (explaining that the 1992 Plan

---

[4] The Court further notes that Consol here has not made a similar determination that the allegedly affected beneficiaries were not "eligible beneficiaries" under its Coal Act Plan. The company has continued to provide benefits to these individuals and their dependents throughout the course of this litigation, and the 1992 Plan has not provided benefits to any of those individuals as it did in *Big River Minerals Corp.*

[5] Plaintiffs also cite *United Mine Workers of America 1974 Pension Plan & Trust v. Walter Energy, Inc.* in support of their position that they have standing to bring this matter. (ECF No. 10 at 6.) However, that case involved a bankruptcy appeal, and standing was addressed in the context of whether the 1992 Plan was a "person aggrieved" for purposes of appealing a bankruptcy court's order. That case, while distinguishable in substance, also has been appealed to the Eleventh Circuit Court of Appeals where it remains pending. 579 B.R. 603 (N.D. Ala. 2016), *appeal docketed*, No. 16-13483 (11th Cir. June 13, 2016).

Trustees filed suit after a "related person" failed to pay monthly per-beneficiary premiums for former employees of a "last signatory operator" who were receiving benefits from the 1992 Plan).

In contrast to those cases, the evidence presented by the parties here shows that the 1992 Plan has not incurred any damages as a result of Consol's plan modifications. The testimony of William M. Chisholm, who is responsible for the day-to-day operations of the 1992 Plan, set forth that the Plan "provides health benefits to individuals (and their eligible dependents) who . . . are entitled to receive retiree health benefits from their last signatory employer as of February 1, 1993 *but are not receiving such coverage*." (ECF No. 10-3 at 3 (emphasis added).) He does not testify that Consol has failed to provide health benefits to any of its eligible beneficiaries. Deborah J. Lackovic, who is the General Manager - Benefits at Consol, testified not only that those beneficiaries continue to receive benefits from Consol but also that she "ha[s] not been apprised of any situation where any beneficiary (out of 2,327 Coal Act retirees and dependents) has complained about a denial of benefits under the CONSOL Energy Coal Act Plan that has not been resolved to the beneficiary's satisfaction." (ECF No. 11-1 at 3.) Finally, and most tellingly, the following discovery response shows that Plaintiffs have not suffered any real or immediate injury with regard to Consol's Coal Act Plan:

> **Admit** that since the Coal Act was enacted in 1992, Plaintiffs have never provided benefits from their Section 9712 Coal Act Plan to any person for whom [Consol] or its related persons are required to provide coverage pursuant to Section 9711 of the Act.

> **Response**: Admitted.

(ECF No. 29-1 at 7 (emphasis in original); *see also* ECF No. 36 at 14 (noting that unlike in *Bibeau Construction Co.*, "[h]ere, it is undisputed that Plaintiffs are not suing to recover any 'unpaid contributions' or otherwise enforce any obligation to make contributions to the 1992 Plan" (citing

26 U.S.C. § 9721 (incorporating one of ERISA's enforcement provisions, 29 U.S.C. § 1451(a), into the Coal Act))).)

Viewing this evidence in the light most favorable to Plaintiffs and taking as true the factual allegations in the Complaint, the Court concludes that Plaintiffs have not suffered an actual or imminent injury as required to establish Article III standing. There is no allegation or evidence that Consol has failed to make contributions or other premium payments to the 1992 Plan. There also is no allegation that Consol has made erroneous determinations regarding a beneficiary's eligibility for benefits under the company's Coal Act Plan. There is no allegation that the 1992 Plan has provided benefits to a beneficiary otherwise eligible to receive benefits under Consol's Coal Act Plan. Further, there is no allegation that Consol has failed to provide the requisite security to the 1992 Plan in case a beneficiary is forced move to the 1992 Plan at some point in the future.

The Court notes that it does not reach this conclusion lightly. The parties have expended many resources briefing the merits of Plaintiffs' claims, but Plaintiffs have failed to provide evidence that their injuries are real as required by the Supreme Court. *See Lujan*, 504 U.S. at 561; *see also Gladstone Realtors*, 441 U.S. at 115. Plaintiffs do not attempt to bring this suit on behalf of the various beneficiaries of Consol's Coal Act Plan or their spouses and other beneficiaries. Rather, Plaintiffs bring this suit because they argue that Consol's plan does not comport with the statutory requirements of the Coal Act and that they will be economically harmed if the allegedly unlawful modifications to the plan cause beneficiaries to move under the umbrella of the 1992 Plan. Until the time at which the 1992 Plan itself is harmed, Consol's beneficiaries can pursue individual remedies, including administrative appeals, and have their own access to the courts.

(*See* ECF No. 36 at 17 (citing 29 U.S.C. § 1132).)  Plaintiffs otherwise have not cited to any relevant authority supporting a conclusion that they have standing under these circumstances. (*See also id.* at 16 n.8 ("The instant case, it appears, is a case of first impression.").)

For these reasons, the Court finds that Plaintiffs' risk-based theory of standing does not hold up to a proper Article III injury-in-fact analysis.  The risk that the 1992 Plan will have to provide benefits to retirees currently receiving benefits from the Consol Coal Act Plan at some point in the future as a result of the present alleged Coal Act violations is too speculative to give rise to Article III standing.  *See Gilbert Imported Hardwoods, Inc.*, 176 F. Supp. 2d at 576 ("Proper standing requires that a plaintiff assert a direct injury that can be traced to the defendant's conduct and from which relief to the plaintiff will likely follow from a favorable adjudication to the plaintiff.").  It may be that the beneficiaries themselves have suffered a concrete and particularized injury that is not hypothetical or speculative, but no beneficiaries are named Plaintiffs in this matter.  The Court is constrained by the facts and parties currently before it. Because Plaintiffs do not have Article III standing, the Court cannot proceed to the merits and must dismiss this action.  *See* Fed. R. Civ. P. 12(h)(3).

## IV.  CONCLUSION

For the reasons above, the Court **FINDS** that it lacks subject-matter jurisdiction over Plaintiffs' claims.  Accordingly, the Court **DISMISSES** the Complaint and **DIRECTS** the Clerk to remove this action from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          September 10, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE